**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GARAGE STRATEGIC PARTNERS LLC, SHREYAS SHAH, and SWETA SHAH**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**CHRISTOPHER RICCOBONO, BJORN BENGTSSON, NICK GARGIULO, EDWARD VOLCHKO, GREATNESS WINS, INC., CCRJVR LAX, LLC, JOHN DOES 1-10, and ABC CO. 1-10,**<br><br>**Defendants.** | **C.A. No. 2:26-cv-14569**<br><br>**COMPLAINT AND JURY DEMAND**<br><br>[redacted] |

## COMPLAINT

Plaintiffs Garage Strategic Partners LLC ("Garage Strategic"), Shreyas Shah, and Sweta Shah by way of Complaint against Christopher Riccobono, Bjorn Bengtsson, Nick Gargiulo, Edward Volchko, CCRJVR Lax, LLC, Greatness Wins, Inc., John Does 1-10, and ABC Co. 1-10 (collectively, "Defendants") alleges as follows:

## PARTIES

1. Plaintiff Garage Strategic is a New Jersey limited liability company with its principal place of business in Bergen County, New Jersey. Garage Strategic is an owner of and investor in UNTUCKit LLC ("UNTUCKit").

2. Plaintiff, Shreyas Shah ("Shreyas"), is a resident of Bergen County, New Jersey, with an address of 208 Truman Dr, Cresskill, NJ 07626. Shreyas is an investor in UNTUCKit.

3. Plaintiff, Sweta Shah ("Sweta"), is a resident of Bergen County, New Jersey, with an address of 208 Truman Dr, Cresskill, NJ 07626. Sweta is an investor in UNTUCKit. Hereinafter, Garage Strategic, Shreyas, and Sweta shall be collectively referred to as "Plaintiffs."

4. Defendant Christopher Riccobono ("Riccobono") is/was a founder and C-suite executive of both UNTUCKit and Greatness Wins, Inc. ("Greatness Wins"). Riccobono is a resident of Morris County, New Jersey, with an address at 85 Green Ave., Madison, NJ 07940.

5. Defendant Bjorn Bengtsson ("Bengtsson") is/was an owner and/or partner in UNTUCKit and its Chief Merchandising Officer. Bengtsson is a resident of Essex County, New Jersey, with an address at 120 Wildwood Avenue, Montclair, NJ 07043. Upon information and belief, Bengtsson is a partner with Riccobono in UNTUCKit, and is therefore a co-conspirator of the scheme set forth below.

6. Defendant Nick Gargiulo ("Gargiulo") is/was the VP of Finance and Chief Operating Officer of UNTUCKit and conducts business at 110 Greene St., New York, NY 10012.

7. Defendant Edward Volchko ("Volchko") is/was the Chief Financial Officer of UNTUCKit and conducts business at 110 Greene St., New York, NY 10012. Hereinafter, Riccobono, Bengtsson, Gargiulo, and Volchko shall be collectively referred to as the "Individual Defendants."

8. Upon information and belief, Defendant Greatness Wins is a Delaware corporation that manufactures branded men's and women's apparel and is, upon information and belief, an alter ego of UNTUCKit. [redacted] By way of example, but not limitation, several of UNTUCKit's full-time employees, whose salaries are paid by UNTUCKit, simultaneously served in roles for Greatness Wins, and at the direction of Riccobono. Upon information and belief, Riccobono and Greatness Wins are alter egos of each other, ignore typical corporate formalities, and utilize Riccobono's residence in Madison, NJ as a place of business for Greatness Wins.

9. Defendant CCRJVR Lax, LLC ("CCRJVR Lax") is a New Jersey limited liability company, and upon information and belief, an alter ego of and instrumentality of Riccobono, sharing his address of 85 Green Ave., Madison, New Jersey. Upon information and belief, Riccobono utilizes CCRJVR Lax as a means to defraud creditors.

10. John Does 1-10, and ABC Co. 1-10, upon information and belief, are fictitious entities involved in the underlying scheme set forth below.

**JURISDICTION**

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, because Plaintiffs' claims arise under federal law (i.e., Rule 10b-5 of the Securities Exchange Act of 1934).

12. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because the state law claims are so related to Plaintiffs' federal securities fraud claims, that they form part of the same case or controversy as those federal claims.

13. This Court has personal jurisdiction over each of the Individual Defendants.

14. Riccobono is a resident of New Jersey and is subject to the Court's general personal jurisdiction.

15. Bengtsson is a resident of New Jersey and is subject to the Court's general personal jurisdiction.

16. Gargiulo conducts significant business activities within the State of New Jersey and attended meetings, both in person and virtually, in New Jersey with Garage Strategic, and as set forth at length below, purposefully directed his unlawful activities relating to the scheme described herein in the State of New Jersey.

17. Volchko is a resident of New York, conducts significant business activities within the State of New Jersey and attended meetings, both in person and virtually, in New Jersey with Garage Strategic, and as set forth at length below, purposefully directed his unlawful activities relating to the scheme described herein in the state of New Jersey.

18. Defendant Greatness Wins is, upon information and belief, an alter ego of Riccobono and utilizes Riccobono's residence in New Jersey as a place of business for Greatness Wins. Greatness Wins conducted significant business activities, including business activities related to the scheme described in this Complaint, in New Jersey.

19. Defendant CCRJVR Lax is a New Jersey limited liability company and is subject to the Court's general personal jurisdiction.

20. The Individual Defendants are also subject to personal jurisdiction in this Court under 15 U.S.C. § 78aa, which authorizes nationwide service of process for suits brought under the Securities Exchange Act of 1934. Because each Individual Defendant has sufficient minimum contacts with the United States, given that each resides in the United States, the Court has personal jurisdiction over them.

21. As to each Defendant, the Court's exercise of personal jurisdiction complies with due process requirements.

22. Finally, because the Court has personal jurisdiction over all Defendants with respect to Plaintiffs' federal securities fraud claims, the Court has pendent personal jurisdiction over the Defendants with respect to the Garage Strategic state law claims.

## FACTUAL ALLEGATIONS

23. Beginning in or about 2024, members of Garage Strategic (the "Investors") participated in several meetings with Riccobono concerning an investment in and relationship with

UNTUCKit, where in addition to providing capital, Riccobono represented that the Investors would have a "voice" in the business and operations of UNTUCKit.

24. Indeed, Riccobono stated to Garage Strategic members, Jeff Kurtz ("Kurtz") and Glen Schulman ("Schulman"), that he had a present intention for Garage Strategic and/or its members to serve as strategic partners and/or "active" investors in UNTUCKit's business with an ability to influence and participate in decision making.

25. So as to induce the Investors to contribute substantial capital to UNTUCKit, Riccobono made clear to the Investors and in particular to Kurtz and Schulman that UNTUCKit had a present intention to provide the Investors with a seat on the UNTUCKit Board of Advisors, and that UNTUCKit had a present intention to utilize a production source identified by the Investors to manufacture UNTUCKit's branded apparel. In this regard, UNTUCKit confirmed to Kurtz and Schulman, through Riccobono, that the source of goods identified by the Investors represented an enormous cost savings for UNTUCKit.

26. As a result of Riccobono's representations, the Investors understood that their involvement in UNTUCKit's business as a strategic partner and/or active investors would have a substantial, positive impact on UNTUCKit's bottom line and would result in a meaningful increase in the value of their investment.

27. Additionally, in connection with inducing Garage Strategic to make an investment, Riccobono made numerous representations to the Investors, concerning the strength of UNTUCKit's business, its financials, the value of its intellectual property, trade secrets, and goodwill, and its strategy to utilize Garage Strategic's funds to increase UNTUCKit's value.

28. In this regard, Riccobono represented that UNTUCKit was current with payables, that its annual sales revenue was approximately [redacted], that Garage Strategic's investment would be used to grow UNTUCKit's retail footprint, expand its marketing, and increase inventory.

29. In or about February 2025, Riccobono represented to Garage Strategic members Kurtz, Schulman, and John Woods ("Woods") that UNTUCKit's financial state would change dramatically upon a $10,000,000 investment and that it was poised for dramatic growth from such an investment. Indeed, Riccobono provided details as to his present intention for the use of funds from Garage Strategic's proposed investment, even going so far as to identify specific locations where funds would be used to immediately open additional stores. Volchko participated with Riccobono at a number of these meetings and joined with him in making representations as aforesaid.

30. To further emphasize the value of UNTUCKit, Riccobono participated in a lengthy negotiation of stock warrants (the "Warrants") with Kurtz, Schulman and Scott Baron ("Baron"), another member of Garage Strategic. At about the time of these negotiations, Riccobono also represented to Kurtz, Schulman and Woods that Garage Strategic's investment was a unique opportunity to obtain an ownership interest in UNTUCKit at a much lower valuation than what the company was actually worth, and that its intellectual property alone was worth more than the investment price he was offering to Garage Strategic. Towards this end, and unbeknownst to Garage Strategic, Riccobono feigned reluctance concerning his position on the Warrants and "reluctantly" negotiated the Warrant price, leaving Garage Strategic to further believe that the value of its underlying investment was substantial.

31. Certainly, Riccobono was emphatic to Kurtz, Schulman, and Woods that he was laser-focused on growing UNTUCKit's business.

32. Thus, when the Investors specifically queried Riccobono on whether UNTUCKit shared resources with another of Riccobono's companies, Greatness Wins, Riccobono was clear that the entities remained entirely separate and his focus was on building UNTUCKit.

33. In this regard, Riccobono represented that there was a present intention that an investment from Garage Strategic would be used to expand UNTUCKit's efficiencies, sales, retail footprint, and grow inventories, and would not be leveraged to benefit Greatness Wins.

34. Unfortunately, unbeknownst to Garage Strategic prior to its investment, Riccobono and Volchko concealed the fact that UNTUCKit had been [redacted]

35. Unquestionably, given their material misrepresentations and omissions as to UNTUCKit's business and its value, together with the knowing omissions concerning the [redacted] of UNTUCKit's financial position, there is no doubt that Riccobono and Volchko sought to unlawfully induce Garage Strategic to make a significant investment in UNTUCKit.

36. Indeed, the financial information provided to Garage Strategic and/or the Investors prior to a capital contribution contained different figures from the audited financial statement obtained after the investment. Unfortunately, Riccobono concealed from Garage Strategic what was actually happening at UNTUCKit and otherwise grossly misrepresented the value of UNTUCKit so as to unlawfully induce Garage Strategic's investment.

37. Thus, in or about March of 2025, upon successfully inducing Garage Strategic, Shreyas, and Sweta to make an investment and to purchase shares through a stock purchase agreement (the "Agreement"), UNTUCKit received an infusion of capital of approximately $10,000,000 (the "Investment"), based upon Riccobono's false representations.

38. Section 5.3 of the Agreement incorporates the Seventh Amended and Restated Limited Liability Company Operating Agreement of UNTUCKit LLC (the "A&R LLC

Agreement"), which provides that, "[t]o the extent such Purchaser is not a party to the A&R LLCA as of the date of this Agreement, such Purchaser shall have executed and delivered a joinder to the A&R LLC Agreement."

39. The Agreement contains a provision stating that UNTUCKit "is not in violation or default (i) of any provisions of its A&R LLC Agreement, (ii) of any instrument, judgment, order, writ or decree, (iii) under any promissory note, indenture or mortgage or (iv) of any provision of federal or state statute, rule or regulation applicable to the Company, the violation of which would have a Material Adverse Effect."

40. In June of 2025, Riccobono made further representations to Woods, as well as to Baron, that UNTUCKit's [redacted] and that there has been a [redacted] In this regard, Riccobono sought to induce Garage Strategic to make a further investment, stating that it is [redacted] In fact, Riccobono specifically represented that an additional investment would be utilized to [redacted] To that end, Riccobono identified largely the [redacted]

41. Unfortunately, only after making the Investment, Garage Strategic learned that UNTUCKit's prior representation that its [redacted] In actuality, UNTUCKit's business model centered on [redacted]

42. While Riccobono represented that he was focused on growing UNTUCKit's business, in truth, Riccobono was [redacted]

[redacted] and failing to pay vendors according to terms.

43. Moreover, after the Investment and during the time of Garage Strategic's relationship with UNTUCKit as its strategic partner, it was disclosed through various employees, executives, and C-suite officers, including Riccobono, that UNTUCKit was essentially [redacted] Indeed, Riccobono admitted that UNTUCKit was [redacted]

44. Rather than focusing on growing its business, expanding efficiencies, sales, and retail footprint as represented, Riccobono and UNTUCKit were [redacted] and Riccobono's lavish lifestyle, including frequent pleasure trips and bankrolling his New Jersey shore house.

45. In this regard, Riccobono would, upon information and belief, [redacted] In short, Garage Strategic became aware only after making the Investment that Riccobono and other employees charged with operating UNTUCKit were not [redacted] but instead [redacted]

46. Bengtsson was one such employee and a "partner" to whom monies would flow. He held a key "C-Suite" position but, upon information and belief, [redacted], except for holding classes at UNTUCKit's offices in connection with his position as a professor at a local college.

47. In this regard, by failing to use [redacted] as represented, UNTUCKit and Riccobono intentionally ensured that UNTUCKit would be unable to [redacted]

[redacted] such as Garage Strategic. Instead, Riccobono, Bengtsson, and others would personally [redacted] they claimed they were raising for UNTUCKit while [redacted]

48. Worse still, while contending on the one hand that he was focused on UNTUCKit's business, Riccobono was simultaneously competing with UNTUCKit through his funding of and work in another of his ventures, Greatness Wins.

49. There is no doubt that Riccobono was focused on Greatness Wins and not UNTUCKit, when, in addition to Derek Jeter, Riccobono announced in 2025, after the Investment, in a well-orchestrated and extensively publicized marketing campaign, the inclusion of NFL superstar Brock Bowers as a Greatness Wins "Equity Partner".

50. Indeed, to bolster Greatness Wins at the expense of UNTUCKit and despite his representations to the contrary, Riccobono caused Greatness Wins to [redacted] utilize the resources, employees, designs and styles of certain apparel belonging to UNTUCKit, as well as, upon information and belief, [redacted] to benefit Greatness Wins. Undoubtedly, some portion of Garage Strategic's Investment, after monies were deposited into UNTUCKit's accounts, was, upon information and belief [redacted]

51. Thus, in connection with operating Greatness Wins, Riccobono, upon information and belief, utilized and/or leveraged certain facets of UNTUCKit's business, including its factories, employees, designs, and [redacted], to fund his other venture.

52. By way of example and without limitation, Riccobono would utilize key employees of UNTUCKit to solicit investors for Greatness Wins, and to otherwise pursue business

opportunities for Greatness Wins, such as meetings with potential customers, attending golf events, and investing in booths at trade shows in lieu of pursuing business opportunities for UNTUCKit.

53. There is simply no doubt that Riccobono competed with UNTUCKit by personally [redacted] and manning a booth for Greatness Wins at certain trade shows and otherwise supporting competitive activities of Greatness Wins, including opening a competing Greatness Wins retail outlet approximately 100 yards from an UNTUCKit retail location.

54. Certainly, Riccobono was aware that he was intentionally [redacted] UNTUCKit's assets.

55. Additionally, upon information and belief, Gargiulo, UNTUCKit's Vice President of Finance and Chief Operating Officer, along with other UNTUCKit executives, including Volchko, have personal knowledge of Riccobono's and Greatness Wins' [redacted] and/or to other defendants, all to ensure that UNTUCKit remained a functioning but [redacted] enterprise, with any real assets [redacted].

56. Gargiulo and Volchko knew or, at the very least, should have known that UNTUCKit's workforce consisted of a substantial number of executives who were [redacted] their duties as employees. In fact, Gargiulo and Volchko were among those executives who [redacted], and like Riccobono, made [redacted] concerning UNTUCKit's finances.

57. Indeed, Gargiulo would circulate [redacted] to Garage Strategic, of which Volchko, upon information and belief, most certainly would have been involved in supplying information, wherein [redacted]. Certainly, Gargiulo and Volchko knew or should have known that their representations concerning UNTUCKit's [redacted] were materially false.

58. Similarly, UNTUCKit's Vice President of Product Development and Production acknowledged that UNTUCKit's supply chain is [redacted]

59. In fact, a portion of UNTUCKit's goods in inventory at retail stores had been [redacted] While on the one hand, UNTUCKit was aware it was holding [redacted], on the other hand, Riccobono was instructing store managers to give away new inventory to his friends, who were seeking refreshed wardrobes. Certainly, Riccobono was conducting UNTUCKit's business as if its managers were his personal stylists and made decisions to give away valuable merchandise, constituting a theft of UNTUCKit's assets and clearly failing to exercise ordinary business judgment.

60. Equally concerning were admissions made by Gargiulo. In fact, Gargiulo remarked on at least one occasion that UNTUCKit's business practices were so [redacted] Gargiulo even acknowledged, after the Investment, that UNTUCKit's failure to [redacted] Gargiulo's acknowledgments in this regard were particularly troubling, as his statements made clear UNTUCKit was in, and had been in, knowing violation of [redacted], constituting a breach of its representations in the Agreement.

61. Curiously, Gargiulo was also highly critical of UNTUCKit's [redacted], stating that he was [redacted].

62. On January 10, 2026, when reflecting on his conduct, Riccobono curiously queried one of the Investors, Jordan Levitt, "how do you know when you've become a 'con'?" Certainly, Riccobono's comment reflected an admission as to his state of mind.

63. In or about the summer of 2026, UNTUCKit secretly entered into negotiations to sell all of its assets (the "Sale").

64. Garage Strategic had no knowledge of the Sale during its negotiation. It had retained counsel and in late August of 2026 had proceeded toward filing suit, based upon the foregoing unlawful conduct.

65. However, after learning of the sale, Garage Strategic delayed the formal filing of claims and the Sale was consummated. At about the time of closing or shortly thereafter, Riccobono flaunted UNTUCKit's revenue of approximately $250,000,000, even though during his relationship with Garage Strategic he had previously claimed revenue of approximately [redacted]. Certainly, Riccobono has never identified where the remaining [redacted] may have gone. Upon information and belief, Riccobono claimed the purpose of the Sale had nothing to do with rescuing a distressed asset, but was designed to accelerate growth of UNTUCKit's healthy brand.

66. Despite the foregoing, UNTUCKit has not, as of this filing, produced an audited financial statement for 2025.

67. Based upon all of the facts set forth above, there is no doubt that Riccobono and his cohorts have acted unlawfully and perpetuated a fraud.

68. Unquestionably, by and through the foregoing unlawful conduct, Riccobono, Bengtsson, Gargiulo, Volchko, CCRJVR Lax, and Greatness Wins, together with ABC Co. 1-10 and John Does 1-10, participated in a scheme to defraud Garage Strategic and to place UNTUCKit's assets beyond the reach of creditors.

69. Accordingly, Plaintiffs bring this action to obtain redress for Defendants' unlawful conduct.

**COUNT I**
**(Tortious Interference with a Business Relation – Against Christopher Riccobono)**

70. Plaintiffs hereby repeat, incorporate, and reiterate the allegations contained in the preceding paragraphs as if fully set forth herein at length.

71. Plaintiffs and UNTUCKit entered into a business relationship as represented by the Agreement.

72. Riccobono knew of and was aware of the terms of the Agreement.

73. Plaintiffs had a protected interest in the business relation.

74. Riccobono knowingly and willfully interfered with the business relation between Plaintiffs and UNTUCKit by and through his unlawful conduct as set forth above.

75. Riccobono's conduct was done without justification, and was willful, wanton, and malicious for the purpose of enriching himself at the expense of Plaintiffs.

76. As a direct and proximate result of Riccobono's tortious interference with the Agreement, Plaintiffs have suffered and continue to suffer irreparable harm and damages.

**COUNT II**
**(Fraudulent Transfer Under *N.J.S.A.* § 25:2-25, et seq. – Against All Defendants)**

77. Plaintiffs hereby repeat, incorporate, and reiterate the allegations contained in the preceding paragraphs as if fully set forth herein at length.

78. "A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (b) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due." *N.J.S.A.* § 25:2-25(a).

79. In connection with the operation of UNTUCKit, Greatness Wins and CCRJVR Lax were, upon information and belief, mere instrumentalities and alter egos of UNTUCKit and/or Riccobonno, and accordingly creditors of UNTUCKit are creditors of Greatness Wins, CCRJVR Lax and/or Riccobono within the meaning of the New Jersey Uniform Fraudulent Transfer Act and other operative law.

80. Defendants intentionally effectuated the transfer of UNTUCKit's assets to hinder, delay, or defraud the creditors of UNTUCKit, including the Investors.

81. Defendants acted in concert so as to knowingly and willfully place the assets of UNTUCKit beyond the reach of creditors.

82. Thus, Defendants participated in the unlawful transfer of assets to an insider, including but not limited to Riccobono and/or to Greatness Wins so as to frustrate Plaintiffs as a creditors.

83. As a direct and proximate result of Defendants' violations of the New Jersey Uniform Fraudulent Transfer Act, Plaintiffs have suffered and continue to suffer damages.

**COUNT III**
**(Fraudulent Transfer Under 6 Del. C. § 1301, et seq. – Against All Defendants)**

84. Plaintiffs hereby repeat, incorporate, and reiterate the allegations contained in the preceding paragraphs as if fully set forth herein at length.

85. "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." 6 *Del. C.* § 1304.

86. In connection with the operation of UNTUCKit, Greatness Wins and CCRJVR Lax were, upon information and belief, mere instrumentalities and alter egos of UNTUCKit, and accordingly creditors of UNTUCKit are creditors of Greatness Wins, CCRJVR Lax and/or Riccobono within the meaning of the Delaware Uniform Fraudulent Transfer Act and other operative law.

87. Defendants intentionally effectuated the transfer of UNTUCKit's assets to hinder, delay, or defraud the creditors of UNTUCKit, including the Investors.

88. Defendants acted in concert so as to knowingly and willfully place the assets of UNTUCKit beyond the reach of creditors.

89. Thus, Defendants participated in the unlawful transfer of assets to an insider, including but not limited to Riccobono and/or to Greatness Wins so as to frustrate Plaintiffs as a creditors.

90. As a direct and proximate result of Defendants' violations of the Delaware Fraudulent Transfer Act, Plaintiffs have suffered and continue to suffer damages.

**COUNT IV**
**(Civil Conspiracy – Against All Defendants)**

91. Plaintiffs hereby repeat, incorporate, and reiterate the allegations contained in the preceding paragraphs as if fully set forth herein at length.

92. Defendants together acted in concert to commit the tortious interference, fraudulent transfer, securities fraud, and conversion described herein.

93. Defendants, through oral and written communications, entered into an agreement to inflict injury upon Garage Strategic.

94. Defendants engaged in multiple overt acts to effectuate this agreement, including overt acts to intentionally effectuate the transfer of UNTUCKit's assets to hinder, delay, or defraud the creditors of UNTUCKit, including the Investors.

95. Defendants acted in concert so as to knowingly and willfully place the assets of UNTUCKit beyond the reach of creditors.

96. Thus, Defendants participated in a civil conspiracy including but not limited to the unlawful transfer of assets to an insider, including but not limited to Riccobono and/or to Greatness Wins, so as to frustrate Plaintiffs as creditors.

97. As a direct and proximate result of Defendants' civil conspiracy, Plaintiffs have suffered and continue to suffer damages.

**COUNT V**
**(Securities Fraud: Violation of 17 C.F.R. § 240.10b-5 – Against Christopher Riccobono)**

98. Plaintiffs hereby repeat, incorporate, and reiterate the allegations contained in the preceding paragraphs as if fully set forth herein at length.

99. In connection with the investment and financial condition of UNTUCKit, Riccobono made a material misstatement or omitted material information.

100. Riccobono made material misstatements, including but not limited to, UNTUCKit's financial condition, the strength of its business, the value of its intellectual property, trade secrets, and goodwill, and its intention to utilize funds from the Agreement. Those misrepresentations were made in connection with, and acted as an inducement to, the purchase or sale of a security, namely the Agreement.

101. In making these misrepresentations, Riccobono acted with scienter because, as alleged in detail above, with respect to each material misrepresentation, Riccobono knew that the misrepresentations were false when made or, at minimum, Riccobono acted recklessly with respect to the truth or falsity of the representations, for all of the reasons set forth above.

102. Plaintiffs reasonably relied on the material misrepresentations in its decision to purchase the securities of UNTUCKit.

103. As a direct and proximate result of Riccobono's material misrepresentations and omissions, Plaintiffs have suffered and continue to suffer irreparable damages.

**COUNT VI**
**(Conversion – Against Christopher Riccobono)**

104. Plaintiffs hereby repeat, incorporate, and reiterate the allegations contained in the preceding paragraphs as if fully set forth herein at length.

105. Plaintiffs had a property interest in its funds from the Investment. When Plaintiffs invested in UNTUCKit, Riccobono represented that UNTUCKit would use the Investment only for specified legitimate business purposes. Plaintiffs never consented to any other use of its funds, which were therefore identifiable property dedicated to a specific purpose rather than a general obligation dischargeable in money.

106. Riccobono wrongfully possessed and disposed of Plaintiffs' Investment funds and thereby converted them. As alleged above, Riccobono misappropriated investment funds, including Plaintiffs' funds, and converted them to his own use, including to pay for his lavish lifestyle, frequent pleasure trips and his New Jersey shore house, as well as other personal expenses and/or his other competing business ventures.

107. As a direct and proximate result of Riccobono's conversion, Plaintiffs have suffered and continue to suffer irreparable harm and damages.

## COUNT VII
## (Unjust Enrichment (in the alternative to Conversion) – Against Christopher Riccobono)

108. Plaintiffs hereby repeat, incorporate, and reiterate the allegations contained in the preceding paragraphs as if fully set forth herein at length.

109. By misappropriating Plaintiffs' Investment for his own personal purposes, as fully alleged above, Riccobono enriched himself and impoverished Plaintiffs, without justification.

110. Riccobono's enrichment came directly at Plaintiffs' expense, because the funds that he misappropriated were the consideration that Plaintiffs paid for its investment in UNTUCKit, which was restricted to specific, legitimate business purposes.

111. Riccobono's retention of the enrichment is inequitable.

112. To the extent that Riccobono's misappropriation is not cognizable under the tort of conversion, Plaintiffs lack a remedy at law.

113. Accordingly, as a direct and proximate result of Riccobono's unlawful conduct, Plaintiffs have suffered and continue to suffer damages.

## COUNT VIII
## (Common Law Fraud – Fraud in the Inducement - Against All Defendants)

114. Plaintiffs hereby repeat, incorporate, and reiterate the allegations contained in the preceding paragraphs as if fully set forth herein at length.

115. Before Plaintiffs invested, UNTUCKit, through the Individual Defendants, made material misrepresentations and omissions regarding UNTUCKit's operational and financial condition, its business prospects, the value of its intellectual property, trade secrets, and goodwill, and the intended use of the Investment.

116. As alleged in detail above, these pre-investment representations and omissions included, without limitation:

(i) Riccobono's representations to [redacted];

(ii) Riccobono's representations that [redacted]; and

(iii) The Individual Defendants' representations and omissions concerning UNTUCKit's [redacted], including that UNTUCKit was [redacted] had annual sales revenue of approximately [redacted] would use Garage Strategic's Investment [redacted]

117. Each of these representations was materially false when made, and each concealed material facts that the Defendants knew and that Plaintiffs did not.

118. The Defendants knew that these representations were false when made or, at minimum, acted with reckless disregard as to their truth or falsity. As officers, directors, and collective majority shareholders of UNTUCKit, the Defendants knew UNTUCKit's actual operational and financial condition at all relevant times.

119. The Defendants made these misrepresentations and omissions to induce Plaintiffs to make the Investment and to purchase securities of UNTUCKit.

120. Plaintiffs justifiably relied on these representations and omissions in deciding to make the Investment and to purchase securities of UNTUCKit.

121. As a result of the Defendants' misrepresentations and concealment, Plaintiffs were damaged in an amount to be determined at trial, including, without limitation, by making the Investment on false pretenses and losing the value and benefits of the bargain it was fraudulently induced to enter.

**COUNT IX**
**(Common Law Fraud - Post-Investment Misrepresentations and Omissions – Against All Defendants)**

122. Plaintiffs hereby repeat, incorporate, and reiterate the allegations contained in the preceding paragraphs as if fully set forth herein at length.

123. After Plaintiffs invested, UNTUCKit, through the Individual Defendants, made material misrepresentations and omissions regarding UNTUCKit's operational and financial condition to Plaintiffs and concealed from Plaintiffs the material facts described above, including UNTUCKit's inability to operationalize, its deteriorating financial condition, and Riccobono's misappropriation of funds.

124. As alleged in detail above, these post-investment representations and omissions included, without limitation:

(i) Riccobono's representations to Woods and Baron in June 2025 that UNTUCKit's stores [redacted],

(ii) Defendants' concealment that UNTUCKit shared resources, employees, designs, styles, and [redacted] with Greatness Wins, and that UNTUCKit resources [redacted] Greatness Wins; and,

(iii) Defendants' misrepresentations and omissions concerning UNTUCKit's [redacted], inventory, lender compliance, and the use of Garage Strategic's Investment.

125. Each of these representations was materially false when made, and each concealed material facts that the Defendants knew and that Plaintiffs did not.

126. The Defendants knew that these representations were false when made or, at minimum, acted with reckless disregard as to their truth or falsity. As officers, directors, and collective majority shareholders of UNTUCKit, the Defendants knew UNTUCKit's actual operational and financial condition at all relevant times.

127. The Defendants made these misrepresentations and omissions to induce Plaintiffs to refrain from acting to protect their Investment, including by refraining from demanding rescission, from pursuing UNTUCKit's books and records, and from filing suit, and to lull Plaintiffs into continued inaction.

128. Plaintiffs justifiably relied on these representations and omissions. In fact, having repeatedly received assurances, Plaintiffs reasonably refrained from taking action to protect their investment.

129. As a result of the Defendants' misrepresentations and concealment, Plaintiffs were damaged in an amount to be determined at trial, including, without limitation, by the loss of the opportunity to rescind their Investment, to demand the return of their funds, or to otherwise act to protect their interests at a time when doing so may have afforded it a meaningful remedy.

**COUNT X**
**(Negligent Misrepresentation (in the alternative to Fraud) – Against All Defendants)**

130. Plaintiffs hereby repeat, incorporate, and reiterate the allegations contained in the preceding paragraphs as if fully set forth herein at length.

131. After Plaintiffs invested, UNTUCKit, through the Individual Defendants, made representations regarding UNTUCKit's operational and financial condition to Plaintiffs that were incorrect. These incorrect representations included those regarding UNTUCKit's ability to

operationalize, its financial condition, and Riccobono's use of funds. UNTUCKit, through the Individual Defendants, also negligently omitted material information in its statements to Plaintiffs.

132. As alleged in detail above, these representations and omissions included, without limitation:

(i) Riccobono's representations to [redacted]

(ii) Concealing that UNTUCKit shared resources with another of Riccobono's competing companies, Greatness Wins; and

(iii) Misrepresenting UNTUCKit's [redacted] [redacted] prior to Garage Strategic's Investment.

133. Each of these representations was materially false when made, and each omitted material facts that the Defendants knew and that Plaintiffs did not.

134. Each of these representations was made negligently when made. As officers, directors, and collective majority shareholders of UNTUCKit, the Defendants knew UNTUCKit's actual operational and financial condition at all relevant times.

135. The Defendants made these misrepresentations to induce Plaintiffs to refrain from acting to protect their investment, including by refraining from demanding rescission, from pursuing UNTUCKit's books and records, and from filing suit, and to lull Plaintiffs into continued inaction.

136. Plaintiffs justifiably relied on these representations. In fact, having repeatedly received assurances, Plaintiffs reasonably refrained from taking action to protect their Investment.

137. As a result of the Defendants' misrepresentations and concealment, Plaintiffs were damaged in an amount to be determined at trial, including, without limitation, by the loss of the opportunity to rescind their Investment, to demand the return of its funds, or to otherwise act to protect their interests at a time when doing so may have afforded them a meaningful remedy.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Garage Strategic demands a trial on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Garage Strategic Partners LLC, Shreyas Shah, and Sweta Shah respectfully request that this Court enter judgment in their favor on each and every claim set forth above and award them relief, including the following:

A. Awarding compensatory and punitive damages in favor of Garage Strategic against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

B. Awarding an accounting and constructive trust upon the assets of Greatness Wins and CCRJVR Lax;

C. Awarding attorneys' fees and costs as allowed by law;

D. Awarding pre-judgment and post-judgment interest; and

E. Awarding all such other relief as the Court deems just, proper, and equitable.

Dated: November 9, 2026

BUCHANAN INGERSOLL & ROONEY PC

/s/ Marc J. Gross

Marc J. Gross (02009-1991)
Daniel Rivlin (013842001)
Mark A. Kasten (086352013)
550 Broad St., Suite 810
Newark, NJ 07102
Tel No: 973-273-9800
Fax No: 973-273-9430
Email: marc.gross@bipc.com
mark.kasten@bipc.com
daniel.rivlin@bipc.com

Karima T. Thompson (*pro hac vice forthcoming*)
1700 K Street, NW, Suite 300
Washington, D.C. 20006
Tel No: 202-452-7996
Fax No: (202) 452-7989
karima.thompson@bipc.com